AO 91 (Rev. 11/82)                **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>MICHAEL STONE and<br>ARTUR BITARYAN | DOCKET NO.<br>15 - 0435M |
|---|---|
| | MAGISTRATE'S CASE NO.<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br>MAR 1 2 2015<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY DEPUTY |

Complaint for violation of Title 18, United States Code, Sections 1349 and 1028A

| NAME OF MAGISTRATE JUDGE<br>Honorable Jacqueline Chooljian | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>Continuing through the present | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

**See Attachment**

LODGED

2015 MAR 12 AM 10: 53
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Stephen Collett    /s/ |
|---|---|
| | OFFICIAL TITLE<br>Simi Valley Police Detective |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>JACQUELINE CHOOLJIAN | DATE<br>March 12, 2015 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Andrew Brown, 11th floor, x0102    REC: Detention

## Attachment

### Count One (18 U.S.C. § 1349)

Beginning in or before 2013, and continuing through on or about March 12, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants MICHAEL STONE, aka Kazaros Bitaryan, and ARTUR BITARYAN (collectively, "Defendants"), together with others known and unknown to the United States Attorney, conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344. The object of the conspiracy was carried out, and to be carried out, in substance, as follows: Defendants and their co-conspirators would build and install skimming devices in gas station pumps and elsewhere to record the bank-issued debit and credit card information of consumers, manufacture counterfeit debit and credit cards, and use them to make fraudulent purchases and withdraw money in the names of the victims of identity theft. Federally insured financial institutions which were defrauded, or to be defrauded, through this conspiracy include Wells Fargo Bank, Chase Bank, Bank of America, Bank of the West, USAA Federal Savings Bank, Citibank, FirstBank, US Bank, Capital One Bank and Compass Bank, among others.

### Count Two (18 U.S.C. § 1028A)

Beginning in or before 2013, and continuing through on or about March 12, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants MICHAEL STONE, aka Kazaros Bitaryan, and ARTUR BITARYAN knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud, as charged in Count One.

1

# A F F I D A V I T

2 **INTRODUCTION**

3      I, Stephen Collett, being duly sworn, hereby depose and state:

4      I am a sworn Police Officer with the Simi Valley Police Department ("SVPD"). My

5 current title is, Detective, and I am assigned to the Property Crimes section of the Detective

6 Bureau. I have been a Police Officer since 1995 and have been employed with the Simi Valley

7 Police Department since November of 1999. Prior to my employment with the Simi Valley

8 Police Department, I worked as a Reserve Police Officer for the Port Hueneme Police

9 Department from 1995 to 1997. Between 1997 and 1999, I worked as a full time Police Officer

10 for the Port Hueneme Police Department. As a Police Officer, I have worked a variety of

11 assignments which include; Traffic Officer, Senior Officer / Field Training Officer and

12 Detective. I have completed the Ventura County Reserve Police Officer Academy and the Rio

13 Hondo Police Academy. This training included several hours of training in Crimes Against

14 Property including but not limited to burglary, theft, grand theft, possession of stolen property,

15 fraud and arson. During my career, I have been the "Handling Officer" at over 6000 calls for

16 service and have completed over 400 investigations involving Crimes Against Property with over

17 100 of these resulting in arrests. During the past 19 years, I have also assisted with thousands of

18 crimes in progress. During these calls I gained firsthand experience with suspects and how they

19 commit their crimes and I am thoroughly familiar with the manner in which Crimes Against

20 Property and Fraud are committed.

21

1    I have also completed 40 hours of training in respect to interviews and interrogations, 30

2    hours of Street Crimes and Field Investigations and I am a graduate of the Robert Presley

3    Institute of Criminal Investigation, two-week core course.

4

5    **PURPOSE OF AFFIDAVIT**

6    This affidavit is made in support of a criminal complaint and arrest warrant for suspects

7    ARTUR BITARYAN ("BITARYAN") and MICHAEL STONE, aka Kazaros Bitaryan

8    ("STONE"), for violation of Title 18, United States Code, Section 1349 and 1028A, conspiracy

9    to commit bank fraud and aggravated identity theft.  As set forth in more detail below, the

10   investigation revealed that STONE manufactured skimming devices which were installed

11   surreptitiously in gas pumps to record the information encoded on consumers' access devices, as

12   well as their manually entered PIN or zip code, which was then used to counterfeit access

13   devices which BITARYAN used to make fraudulent purchases.  The earliest losses I have found

14   so far that are linked to this conspiracy are from 2013, and the losses continued at least through

15   January 2015, the last month for which I have bank records.

16   The facts set forth in this affidavit are based upon my personal observations, review of

17   documents provided by financial institutions, my training and experience, and information

18   obtained from witnesses and other law enforcement officers. This affidavit is intended to show

19   that there is sufficient probable cause for the requested complaint and arrest warrant and does not

20   purport to set forth all of my knowledge of or investigation into this matter.

21

22

1    __PROBABLE CAUSE__

2         **BITARYAN Tries to Flee After Being Caught Using a Counterfeit Access Devices**

3         On Saturday January 4, 2014, I (Detective Stephen Collett) was called in to assist with a

4    Fraud investigation that stemmed from an arrest earlier in the day, which occurred at a local

5    restaurant. On that date, Simi Valley Police Officers, Christopher Herbst and Robert Yoraway

6    responded to the Rock n Roll Café located at 2196 Tapo St. in Simi Valley, CA. During their

7    investigation an individual was arrested for Identity Theft among other charges for his part in the

8    fraudulent activity reported by the business owner. The facts contained herein are based on those,

9    which were outlined in Officer Yoraway's arrest and crime report, which I have since personally

10   reviewed. I also discussed the details of this investigation with him on the date it occurred, which

11   resulted in additional follow-up that was conducted by me.

12

13         On January 4, 2014 at approximately 1343 hours, Officers Yoraway and Herbst

14   responded to the listed Rock-n-Roll Café for a fraud that was reportedly in progress. When the

15   officers arrived, they contacted the two subjects that were determined to be the suspects and

16   source of the call. While contacting them, Officer Yoraway asked them how they paid for their

17   meal at which time one of them (who was later identified as ARTUR BITARYAN) stood up,

18   pulled a credit card out of his wallet, and handed it to Officer Yoraway. The Visa credit card was

19   embossed with the number 4373-0900-0550-8876 and did not have a name on it.

20

21         As Officer Yoraway continued with his investigation, he had Officer Herbst remain with

22   the two suspects while he went inside to speak with the reporting party and owner of the

23   restaurant who was identified as James Treichler. At that time, Treichler identified BITARYAN

1    as the person who purchased the meal with the credit card in question. When the purchase for

2    $21.05 was made, Treichler swiped the card through his card reader and the transaction was

3    approved, but reflected it charged an account bearing the last four numbers of 4332, which did

4    not match those embossed on the card. Furthermore, the name listed on the account was "Pimm /

5    Linda."

6                    **BITARYAN Tries to Hide Additional Counterfeit Access Devices**

7             While speaking with Treichler, Officer Yoraway continued to watch Officer Herbst and

8    the two subjects through the restaurant's window at which time he observed BITARYAN crouch

9    down, shove an unknown item underneath his table's leg, and then sit back down. Officer Herbst

10   related later to Officer Yoraway that the item was a cigarette pack. Eventually, during Officer

11   Yoraway's investigation, he proceeded to pat BITARYAN down whereupon he (BITARYAN)

12   resisted and attempted to flee. After struggling with the officers, BITARYAN was subdued and

13   taken into custody. As this occurred, the other individual who accompanied BITARYAN

14   eventually fled the area while on foot and was never properly identified.

15

16            Once BITARYAN was safely taken into custody, Officer Yoraway searched him and

17   found a wallet in his pants pocket, which contained a Nevada driver's license bearing his

18   (BITARYAN's) photo, but had the name listed as Alex Bristols, which I later learned was

19   counterfeit. The wallet also contained two Chase Bank Visa credit cards bearing the name of

20   Alex L. Bristols and three NetSpend generic Visa credit cards with no name on them.

21   BITARYAN was also found to be in possession of the receipt from the Rock-n-Roll café for his

22   food purchase.

23

1        Later, during the scene investigation, Officer Yoraway recovered the Marlboro Cigarette

2    pack, which was the item placed under the table by BITARYAN where he was seated during the

3    initial contact. Upon examining the contents of the Marlboro Cigarette pack, Officer Yoraway

4    discovered that it contained 16 credit cards. Among those cards were two Chase Visa credit cards

5    bearing the name, Alex L Bristols, five PayPal MasterCards, two Western Union MasterCards,

6    three NetSpend Visa cards, one MyVanilla Visa card and three RushCard Visa Debit cards.

7

8        I have since examined all of the credit cards that BITARYAN had in his possession,

9    which totaled 22 in all, and I verified that they are all counterfeit cards with different numbers

10    encoded within their magnetic strips. In doing so, I ran the cards through a magnetic strip reader

11    that is connected to my department issued work computer where I was able to obtain the

12    information. I also researched the BIN numbers of each account (first six digits of the account

13    numbers) via law enforcement databases and identified the respective banks that they belong to,

14    which included many Federally Insured financial institutions such as, Wells Fargo Bank, Chase

15    Bank, Bank of America, Bank of the West, USAA Federal Savings Bank, Citibank, FirstBank,

16    US Bank and Compass Bank. Since I have made this discovery, I have been in contact with

17    several investigators and/ or account holders with some of the noted financial institutions and

18    verified that ARTUR BITARYAN was not an authorized user to any of the accounts.

19

20        **A Rental Vehicle Used by Both BITARYAN and STONE Is**
21        **Used in Alien Smuggling and Access Device Skimming**
22
23        On the morning of February 5, 2014, I visited ARTUR BITARYAN's residence located

24    at 1164 Katherine Rd. in Simi Valley, CA and noted that a dark colored Chrysler Town &

25    Country minivan, bearing the CA license plate, "6ZVM415" was parked in a makeshift driveway

1    located at the south westernmost portion of the property.  I subsequently learned this is a rental

2    vehicle rented not in the name of either BITARYAN or STONE.

3

4         During the course of my investigation, I installed a GPS tracking device to the described

5    Town and Country minivan, which was done pursuant to a lawfully obtained search warrant.

6    While monitoring the data obtained from the tracking device for the duration it was attached, I

7    noted that on separate dates and times, it visited several gas station locations within California in

8    the middle of the night.

9

10        **The Rental Vehicle Is Used By STONE and BITARYAN to Smuggle Aliens**

11            On February 20, 2014, the GPS data revealed that the Chrysler minivan housing the

12   tracking device entered the Mexican border at the San Ysidro Port of Entry at approximately

13   2147 hours. At approximately 0117 hours (now February 21, 2014), the vehicle re-entered the

14   United States. After making the listed discovery, I contacted Homeland Security Investigations

15   (HSI) Special Agent (SA) Clinton Lindsly who is assigned to the HSI office in Los Angeles. As

16   such, I provided him with the details of my investigation as well as the names of potential

17   suspects and the vehicle information I was tracking. After researching the re-entry of the

18   Chrysler Town and Country minivan via its license plate of, 6ZVM415, he discovered that it did

19   in fact re-enter the country via the San Ysidro Port of Entry on February 21, 2014 at 0118 hours.

20   At that time, the occupants of the vehicle were identified as Arutyun Bitaryan (ARTUR

21   BITARYAN'S brother) and MICHAEL LAZARUS STONE, aka Kazaros Bitaryan.

22

23            On February 26, 2014, the GPS data revealed again that the Chrysler minivan housing the

1    tracking device entered the Mexican border at the San Ysidro Port of Entry at approximately

2    2111 hours. After entering the Country of Mexico, the vehicle travelled to the General A.L.

3    Rodriguez International Airport located in Tijuana where it arrived at 2202 hours. At 0041 hours

4    (now February 27, 2014) the vehicle left the airport and drove a short distance to the Otay Mesa

5    Freeway US Port of Entry where it arrived at approximately 0048 hours and re-entered the

6    United States. Upon re-entry, the data showed that the vehicle traveled N/B on Highway 905, re-

7    connected with Interstate 805 and proceeded S/B, where at 0100 hours re-entered the Country of

8    Mexico via the San Ysidro Port of Entry. The vehicle remained in Tijuana Mexico for the

9    remainder of that day.

10

11        I again spoke with SA Lindsly about the listed vehicle's re-entry on February 27, 2014 at

12   approximately 0048 hours. After conducting additional research, SA Lindsly discovered that the

13   vehicle did in fact re-enter the United States at the specified time and at that time its occupants

14   were identified as ARTUR BITARYAN and Arutyun Bitaryan.

15

16        On February 28, 2014 at approximately 0113 hours, I received a telephone call from SA

17   Lindsly who informed me that the Chrysler Town and Country minivan had just re-entered the

18   United States and that its occupants (later identified as Arutyun Bitaryan, ARTUR BITARYAN

19   and Andranik Mirzoyan) were being detained and the vehicle was being secured for a secondary

20   inspection. During that inspection, SA Lindsly learned (via speaking with agents at the border)

21   that the van was filled with personal identifying information including passports and birth

22   certificates, etc. for individuals other than the occupants. There was no explanation as to why

23   they were in possession of these documents. Meanwhile, at about the same time, there were

1   individuals that crossed the border on foot, claiming asylum from Armenia and they had no

2   documents with them. There were five of them in total and they were all later identified as

3   Arman Darbinyan (2/12/85), Azniv Manukyan (2/1/86), Ashken Minasyan (2/16/79), Hayk

4   Petrosyan (10/7/10) and Narek Petrosyan (8/7/04). The information these people provided to the

5   agents at the border matched the documents that ARTUR BITARYAN, Arutyun Bitaryan and

6   Andranik Mirzoyan had in their possession, but all of them claimed to not know one another.

7

8                    **A Card Skimmer Was Found Hidden in a Gas Pump**
9                      **at a Gas Station the Rental Vehicle Visited**
10
11              On March 10, 2014 at approximately 1700 hours, I visited the Mobil gas station located

12   at 25357 N. Chiquella Lane in Newhall, CA, which is one of the locations the Chrysler Town

13   and Country minivan visited on March 6, 2014 (pursuant to the GPS data) and I inspected all of

14   the gas pumps at the location. In doing so, I located and recovered a skimming device that was

15   connected to the internal components and card reader inside pump number 6.

16

17              **The Rental Vehicle Is Filled with Gas Using a Counterfeit Mobil Card**

18              On March 12, 2014, Detective Eric Vitale (San Luis Obispo PD) responded to the Mobil

19   Gas station located at 1339 Spring St. in Paso Robles, where the Chrysler minivan had visited

20   earlier that day (per the GPS data). During his investigation there, he watched video that was

21   captured from an external surveillance camera and confirmed that the Chrysler van arrived at

22   approximately 1619 hours (based on the time stamp of the camera) and stopped at pump #7.

23   Further research revealed that an occupant of the van purchased $81.73 worth of gas and used an

24   Exxon Mobil card bearing the name of "Finnegan and Diba" and having an account number

25   ending in "6067." I subsequently watched that footage as well and confirmed to the reported

1    observations by Detective Vitale.

2

3    I researched "Finnegan and Diba" via law enforcement databases as well as the Internet

4    and discovered that it was a law firm located at 3660 Wilshire Blvd. in Los Angeles, CA. On

5    March 13, 2014, I spoke with Robert Aguirre who is an investigator for Citibank, which is the

6    bank that funds Exxon Mobil accounts. Per my request, he was able to verify that the account in

7    question did in fact belong to the Finnegan and Diba law firm. In doing so, he personally

8    contacted the firm and spoke with Kasey Diba (one of the partnered attorney's at the firm) for a

9    statement. Diba informed him that the charge in Paso Robles was not made by him or any other

10    people authorized to use the account. He also verified with Investigator Aguirre that all of the

11    cards for their account were accounted for.

12

13    **Fraudulent Purchases Were Made at Several Gas Stations the Rental Vehicle Visited**

14    Based on the above noted information, Investigator Aguirre opened an investigation and

15    faxed me the account details and recent transactions to the Finnegan and Diba account. While

16    looking at the account details, I noted the following important information:

17

18    On March 6, 2014, a purchase in the amount of $75.85 was placed to the account at the

19    Mobil Gas station located at 25357 Chiquella Lane in Newhall, CA. This is the same location

20    that the Chrysler minivan visited on March 6, 2014 (per the GPS data) and is also where I

21    recovered a skimming device a few days later.

22

23    On March 7, 2014, a purchase in the amount of $87.32 was placed to the account at the

1    Mobil Gas station located at 14804 Power St. in Lost Hills, CA. Per the GPS tracker data, the

2    Chrysler minivan visited that location on March 7, 2014 at approximately 1739 hours.

3

4        On March 8, 2014, a purchase in the amount of $79.19 was placed to the account at the

5    Mobil Gas station located at 27705 McBean Parkway in Santa Clarita, CA. Per the GPS tracker

6    data, the Chrysler minivan visited that location on March 8, 2014 at approximately 1920 hours

7    and again at 1938 hours.

8

9        On March 11, 2014, a purchase in the amount of $75.65 was placed to the account at the

10   Mobil Gas station located at 5821 Dennis McCarthy Dr. in Lebec, CA. Per the GPS tracker data,

11   the Chrysler minivan visited that location on March 11, 2014 at approximately 2116 hours.

12

13                **Search Warrants Reveal Evidence of a Skimming Conspiracy**
14                   **at the Residences of BITARYAN and STONE**
15
16       On March 26, 2014, lawfully obtained search warrants were served at 1164 Katherine

17   RD. in Simi Valley, CA (hereinafter referred to as ARTUR BITARYAN'S residence) and at

18   13001 Telfair Ave. in Sylmar, CA (hereinafter referred to as MICHAEL STONE'S residence).

19

20   **ARTUR BITARYAN'S RESIDENCE**

21       During the search of ARTUR BITARYAN's residence, several noteworthy items were

22   recovered as evidence. Those items consisted of an MSR609 credit card encoding device that

23   was found hidden underneath a couch in ARTUR BITARYAN'S bedroom.  The device appeared

24   to have been intentionally concealed as it was found stuffed between the felt cover located at the

25   bottom of the couch and bottom seat area. $17,000 in United States currency was found hidden

1    in the kitchen, a copy of a Highway Patrol citation issued to ARTUR BITARYAN was found in

2    his bedroom and a bindle of two safe deposit box keys (later verified to belong to ARTUR

3    BITARYAN's Chase Bank safe deposit box) were found in his bedroom. 7 computer discs (one

4    having a label of "firewalls and hacking stuff") was found inside the residence as well. One of

5    those discs was later examined and determined to have a total of 923 unique access device

6    profiles that included account numbers and names of the account holders (for most). One of the

7    access device profiles found on the disc was matched to an account number that was re-encoded

8    onto one of the 22 cards found in ARTUR BITARYAN'S possession on the date of his initial

9    arrest in January of 2015.

10

11         Several of these accounts were issued from Federally Insured financial institutions such

12    as, American Express, Academy Bank National Association, Amarillo National Bank, Arvest

13    Bank, The Bancorp, Bank of America, Bank of the West, Barclays Bank Delaware, Bofi Federal

14    Bank, Bokf National Association, Capital One Bank, Charles Schwab Bank, Chase Bank,

15    Citibank, Citywide Banks, Comerica Bank, Compass Bank, Credit One Bank, Discover Card,

16    Emprise Bank, First California Bank (now Pacific Western Bank), First Citizens Bank and Trust

17    Company, First Commercial Bank, First Hawaiian Bank, First National Bank of Omaha, First

18    Premier Bank, Firstbank, GE Money Bank (now GE Capital Retail Bank), H&R Block Bank,

19    HSBC Bank, Huntington National Bank, Keybank National Association, Metabank, NBH Bank

20    National Association, Nordstrom FSB, Regions Bank, Suntrust Bank, TCF National Bank, TD

21    Bank, US Bank, Vectra Bank Colorado, Wells Fargo Bank and World's Foremost Bank.

22

23         **MICHAEL STONE'S RESIDENCE**

1    During the search of MICHAEL STONE'S residence, numerous items were seized,

2    which included computers and hard drives, etc. Furthermore, a Zebra card printing machine, four

3    gift cards (2 Subway cards, a Vanilla Visa Debit gift card and 1 Starbucks card) and a plain

4    white plastic magnetic strip card were recovered from the residence. These cards were read by

5    Agents at the scene by use of portable card readers and were found to have credit card

6    information stored within their magnetic strips. Also recovered were: a disc for the EXEBA

7    driver software, which I know based on my training and experience is commonly used by

8    identity thieves to re-write and encode account numbers to counterfeit credit cards; a box of

9    numerous white / blank magnetic strip cards, a card skimming device (consistent in appearance

10   with what I believe based on my training and experience as being a gas pump skimming device);

11   all of the necessary components / items and tools which are consistent with the manufacture of

12   credit card skimming devices (wires, data cables, data connectors, tubes in various sizes of black

13   rubber shrink wrap, numerous Bluetooth chipsets, numerous compact flash memory chipsets, a

14   magnetic strip reader component and various tools, etc.); a gas pump card slot/ reader, two gas

15   pump overlay pinpads, and two underlay pinpads were found in MICHAEL STONE'S bedroom.

16

17   **STONE Appears to Have Tested His Counterfeiting Equipment Using**
18   **His Own Accounts and Those of His Friends and Family**
19
20   Forensic examinations of the computers and hard drives taken from MICHAEL

21   STONE'S bedroom were later conducted and the following items of significance were

22   discovered:

23

24   A file containing track data for a few credit card accounts. These accounts belonged to

25   Sarkis Bitaryan, Eleonora Chepshyan, Kazaros Bitaryan (aka MICHAEL STONE) and Michael

1    Casey. This file also contained a "TESTING" portion, which appeared to have questions

2    regarding the process in which these accounts were duplicated. The following is a transcript of

3    that file dialog,

4

5         "TESTING

6         ---------------------------

7         Card one: putting the month as the number after the 10.

8         B4147202018004323^BITARYAN/KAZAROS ^0812101200000000000000395000000

9         4147202018004323=081210120000395

10

11        Card two: putting 10 as the number after the 10.

12        B4147202018004323^BITARYAN/KAZAROS ^0812101000000000000000395000000

13        4147202018004323=081210120000395

14

15        Card three: spacing before the name, does is matter?

16        B4147202018004323^BITARYAN/ KAZAROS ^0812101100000000000000395000000

17        4147202018004323=081210110000395

18

19        Card four: can you add padding to a card that had less than usual?

20        B5401683035675005^CASEY/MICHAEL ^0912101200000349000000

21        5401683035675005=091210120000349

22

23        Card five: when 5 zeros are added to the end of the second track does it work?

13

1        B4147202018004323^BITARYAN/KAZAROS ^0812101100000000000000395000000

2        4147202018004323=08121011000039500000

3

4        Card six: when 8,2 zeros are added before the three digits does it work?

5        B4147202018004323^BITARYAN/KAZAROS

6        ^0812101100000000000000000000000395000000

7        4147202018004323=081210110000395"

**The Files in STONE's Residence Contained the Same Account Numbers that Had Been Re-Encoded onto Access Devices BITARYAN Was Caught With**

The forensic analysis also revealed files containing a large amount of track data (access devices) with credit card account numbers and account holder names. Among these profiles (access devices) were the account numbers found encoded on the two previously mentioned Subway Gift Cards recovered from MICHAEL STONE'S residence on March 26, 2014 and five of the account numbers found re-encoded amongst the 22 cards ARTUR BITARYAN had in his possession during his January 4, 2014 arrest. There were over 1,600 unique access devices (credit card profiles) found within these files. Of those profiles, a large number of them belonged to Federally Insured financial institutions, such as but not limited to, Discover Card, The Bankcorp, Regions Bank, USAA Savings Bank, The Fifth Third Bank, Barclays Bank, Citibank, US Bank, Bank of the West, Chase Bank, Capital One, Wells Fargo Bank, Compass Bank, American Express and Bank of America, etc.

There were also files recovered that pertained to (copies of) insurance statements belonging to MICHAEL STONE and Eleonora Chepshyan, literature for a program known as "Stripe Snoop," which is a magstripes reader program that is designed to decode magnetic stripes

1    on cards, files pertaining to the manufacture of fake IDs (such as the "The Ultimate Fake ID

2    Guide 2009 V5") and literature on what supplies would be needed, etc. as well as directions on

3    the various methods of manufacture (inkjet printing, Adobe photoshopping, creating barcodes

4    and more), a bootable file titled, "FBI Forensic Field Kit," several "SANS Security" files

5    pertaining to hacker techniques, exploits and incident handling and a file on the basics of

6    hacking, penetration and testing. There were also directions on how to get an anonymous

7    offshore email account and how to sell IDs anonymously as well as "Mini123" and "MSR606"

8    program files, which are magnetic card reader and writer type programs commonly used by fraud

9    suspects.

10

11        I have since contacted a few of the account holders as well as a few bank investigators

12    with the financial institutions related to the accounts (access devices) found on the computers

13    recovered from MICHAEL STONE'S bedroom and have verified that he was unlawfully in

14    possession of these profiles.

15

16            **The Fraud Extends to Colorado When the Rental Vehicle Was There**

17        On January 21, 2015, I sent Chase Card Investigator, Robby Perry, the list of profiles

18    (both credit card and debit card numbers) that were found on MICHAEL STONE'S computers.

19    On January 23, 2015, I received an emailed response from him, which had an attached

20    spreadsheet outlining some of the identified accounts. Upon further review into Investigator

21    Perry's spreadsheet, I noted that on March 23, 2014, there were a total of 8 fraudulent charges

22    made to various accounts in the cities of Glenwood Springs, Lakewood, Littleton and

23    Westminster Colorado. As mentioned earlier in this investigation, the Chrysler Town and

1    Country minivan, which previously had a GPS tracking device attached to it revealed the van

2    visited the State of Colorado between March 20, 2014 and March 24, 2014. Based on the GPS

3    data, the vehicle either passed through or stopped within each of these areas during the course of

4    the trip. For example, on March 23, 2014 at 1105 hours (PST), the vehicle stopped near the

5    Nordstrom Rack store located at 393 S. Vance St. in Lakewood, CO for approximately 36

6    minutes. One of the fraudulent charges on that date was made at a Nordstrom Rack store (store

7    number #0110) located in Lakewood, CO. The transaction time, which is listed in "EST" was

8    documented at 1438 hours. I have since researched the Nordstrom Rack website and discovered

9    that this store is the only one located in Lakewood, CO. Although the actual perpetrator was

10    never identified, the activity is consistent with what has been seen during the course of this

11    investigation. Another example is shown with regard to two more fraudulent charges that were

12    made at a Wholefoods Grocery Store in Westminster, CO and at a Ross Store in Westminster,

13    CO on that date. The charge at the Wholefoods Grocery store was made at 1747 hours, EST and

14    the charge at the Ross Store was made at 1732 hours, EST. After doing an Internet query on both

15    locations, I learned that the Ross Store in Westminster, CO is presently located at 9250 Sheridan

16    Blvd. and one of the Wholefoods Grocery Stores in Westminster, CO is located at 9229 Sheridan

17    Blvd. Per the tracker data, the vehicle was in the area of those two stores on that date between

18    1407 hours and 1451 hours (PST) respectively.

19

20                                    **MICHAEL STONE'S STATEMENT**

21        During the course of the search warrant service United States Secret Service Special

22    Agent, Steve Scarince and I sat with Michael STONE in the backyard area of the residence. At

23    that time, he was not handcuffed or restrained in any way. Before any questioning began, I

1    informed him that he was not under arrest and was free to leave at any time, which he agreed he

2    understood.

### STONE Admits the Bedroom Containing the Electronics Is His

4          I described the room that had all of the computer and electronics items in it (referring to

5    the northernmost west bedroom), which STONE admitted was his bedroom.  Later, he also

6    acknowledged that Artur (BITARYAN) was his cousin.  I explained that there had been some

7    items found in the room such as computer components and electronics as well as a credit card

8    printer (referring to the Zebra printer). He quickly corrected me and said that the printer was a

9    "card" printer. He elaborated that he started a business "a while back" where he made novelty

10   ID's such as badges with jokes, etc. I asked him how much he paid for the printer and he could

11   not remember. Later in the interview, he corrected me and verified that the printer had actually

12   been recovered from a storage area (on the back patio). I was not present when it was recovered

13   by another officer assisting with the search warrant thus I had originally believed it was found in

14   his room.  He was however correct.

### STONE Vacillates on Whether He Made Skimming Devices

16         At one point, STONE touched upon the possibility of STONE having made "something"

17   for "somebody" in the past. This conversation was between STONE and Agent Scarince; I was

18   not present. After resuming the recorded interview, Agent Scarince re-visited the conversation

19   and said the following to STONE, "you made reference to the fact that maybe you made

20   something for somebody and that they used it maybe for some type of illegal purpose." Towards

21   the end of Agent Scarince's statement, STONE interrupted him and stated, "I've made lots of

22   stuff... No, I don't know, I'm just saying because the thing you showed me, it doesn't take a

23   genius, I'm starting to put things together, I don't wanna, and that's why I don't really wanna say

17

1   anything cause I don't wanna accidentally, you know… entrap myself in any way."

2         At one point, I briefly got some items recovered from STONE's room, which included a

3   complete skimming device. I showed him this device (which I believed was a gas pump

4   skimming device) and asked him if it was an example of what he has made for people. He said,

5   "If people order something, then, you know… I make it." Upon giving the device a closer look,

6   he said that it "might" have been in a box that he bought, meaning a box of miscellaneous

7   electronics he might have purchased at a swap meet. Agent Scarince told STONE that the item

8   itself was not illegal, but it was what it gets used for that could be. Agent Scarince continued

9   with, "If you're making it, there's nothing wrong with making this..." STONE interrupted and

10  asked, "So why are, so why are you, then why do you want me to..?" Agent Scarince replied

11  with, "Because it's what the end use is." STONE then said, "Then, I don't, I don't know what

12  that is." Agent Scarince asked him that if he was manufacturing "this" (referring to the device),

13  was it something he was making for Artur (BITARYAN). STONE replied, "No." I then asked

14  who he made it for and he said, "I haven't made that." I asked who made it then, because it had

15  been found in his room. He said he didn't know and that it was probably in a box that he got. He

16  then proclaimed that we were making it very difficult for him but he wanted to cooperate.

17

18  **BITARYAN Serves 5 Days in Jail After Pleading Guilty to**
19  **Using the Fraud Card on the Day of His Arrest**
20

21        On January 4, 2014, ARTUR BITARYAN was arrested by the Simi Valley Police

22  Department (details previously stated) for Identity Theft pursuant to Penal Code section 530.5

23  and Commercial Burglary pursuant to Penal Code section 459 regarding this matter. The

24  complaint was filed on January 7, 2014 by the Ventura County District Attorney's Office and

25  later that day ARTUR BITARYAN, during his arraignment, entered a plea of NOT GUILTY as

1   to all counts. On June 11, 2014, ARTUR BITARYAN withdrew his initial plea of NOT

2   GUILTY in Ventura County Superior Court, courtroom 12 and pleaded guilty to counts 1 and 2

3   (one count of 530.5 PC – Identity Theft and one count of 459 PC - Burglary). Per the courtroom

4   docket, BITARYAN expressly, knowingly and intelligently waived and gave up his rights during

5   his change of plea. The sentencing pursuant to this matter was later held in the same courtroom

6   on August 13, 2014. At this hearing, BITARYAN was ordered to serve 180 days in jail.

7   Electronic monitoring however, was Okayed by the court with approval of the Sheriff. Since that

8   time, BITARYAN has only served a total of 5 days in jail, which includes the 4 days he served

9   upon his initial arrest between January 4, 2014 and January 8, 2014. The fifth day of credit was

10  served on September 10, 2014 between 0714 hours and 0725 hours (about 10 minutes). ARTUR

11  BITARYAN is presently out of custody and is on probation with a search condition.

12                                              **CONCLUSION**

13        Based on the above facts, I submit that there is probable cause to believe that ARTUR

14  BITARYAN and MICHAEL STONE have committed violations of Title 18, United States Code,

15  Section 1349 and 1028A, conspiracy to commit bank fraud and aggravated identity theft.

16

17  _____/ s /_____

18                          Stephen Collett

19                          Detective, Simi Valley Police Department

20

21  Subscribed and sworn before me

22

23  this  12  day of March 2015.

24

25                JACQUELINE CHOOLJIAN

26  _____

27  UNITED STATES MAGISTRATE JUDGE

19